**RADIO STEEL & MFG. CO., Plaintiff,**

v.

**MTD PRODUCTS INC., Defendant.**

**No. C81–1506.**

United States District Court,
N.D. Ohio, E.D.

June 15, 1983.

Daniel J. Sammon, Cleveland, Ohio, James P. Ryther, Chicago, Ill., for plaintiff.

Bruce B. Krost, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

The above captioned cause of action came on for trial before this Court on December 6 and 7, 1982. The following shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## THE PARTIES

The plaintiff Radio Steel and Manufacturing Company (Radio) brings this action asserting infringement of its United States Letters Patent Number 3,282,600 ('600) against defendant MTD Products Inc. (MTD). The defendant has answered Radio's complaint, alleging invalidity and noninfringement, and has counterclaimed for declaratory judgment on these same grounds. Jurisdiction is founded under 28 U.S.C. § 1338(a) and venue under 28 U.S.C. § 1400(b).

The plaintiff is an Illinois corporation having its principal place of business in Chicago, Illinois. Roger Tonelli filed the application for the '600 patent on April 29, 1964, and assigned his rights to Radio on September 28, 1965. The patent was issued to Radio on November 1, 1966, and is still owned by the plaintiff.

The defendant is an Ohio corporation having its principal place of business in Cleveland, Ohio.

## THE '600 PATENT

The '600 patent is for a wheelbarrow (see diagrams containing figures 1–5, attached as Appendix A). The patent contains ten claims, claims 1 and 2 being independent, and claims 3–10 being dependent upon claim 2.

The claims at issue as to validity and infringement are 1–4, 6–8 and 10, but for purposes of simplifying the issues the parties have agreed and stipulated that the decision of the Court regarding claims 1–3 and 10 will be controlling as to each of the asserted claims.

The plaintiff asserts, as was asserted in the '600 patent, that the structure disclosed in the patent provides the advantages of improved appearance, greater strength and ruggedness, and savings in the production, packaging, shipment, storage and display of such wheelbarrows.

The specific claims at issue read as follows:

1. A wheelbarrow formed of separable parts including:

(1) a bowl;

(2) a pair of elongate handles each having a length greater than the bowl and in which each of the handles is separable into parts of substantially equal length;

(3) a bumper plate and means for mounting the bumper plate onto the ends of the assembled handles when in position of use;

(4) a cross brace member having channel shaped sections on the opposite ends spaced one from the other by an amount corresponding to the spaced relationship between the handles in their assembled relationship and having a width corresponding to the width of the handles in an intermediate portion thereof to receive the handle portions in fitting relationship within the channel sections and having a length dimensioned to extend beyond the ends of the handle pieces when aligned in abutting relationship one with the other to form the handle and means for securing the handle pieces in the channel sections of the cross brace member;

(5) a pair of leg members comprising elongate strips of a structurally strong material bent to V-shape with the apex of the V lowermost in the assembled relationship to provide a foot rest for the wheelbarrow and with the legs of the V-shaped members extending angularly upwardly and outwardly to engage portions of the handle pieces spaced longitudinally from the abutting edges and means for connecting the ends of the legs to the longitudinally spaced apart portions of the handle pieces and with the leg members spaced laterally one from the other by an amount corresponding to the spaced relationship between the assembled handles;

(6) means for connecting the handles in their laterally spaced apart relationship to the underside of the bowl;

(7) said cross brace member having a portion extending downwardly and outwardly from an intermediate portion thereof to the apex portions of each of the leg members and means for interconnecting said downwardly extending portions with the apex portions of the leg members to prevent spread of the legs and to provide vertical bracing; and

(8) a wheel, and means rotatably mounting the wheel onto the leg members between the forward end portions thereof.

2. A wheelbarrow comprising a bowl, a pair of elongated handles secured to the underside of the bowl in laterally spaced apart relation with each handle being formed of two pieces including a front piece and a rear piece with said pieces being aligned one with the other in end to end abutting relationship to form the handle, a bumper plate and means mounting the bumper plate on the forward ends of the front pieces to interconnect the front pieces in their assembled relation, a cross brace member extending crosswise between the handles and beneath the bowl with channel sections on the outer end portions of the cross brace member spaced one from the other by an amount corresponding to the spaced relationship between the handles and having a width dimensioned to correspond to the width of the handle portions to receive the handle portions therein in fitting relationship and means for securing the handle portions in the channel sections with the two pieces aligned in end to end relation and with the abutting ends in an intermediate portion of the channel section, said cross brace member also including members extending downwardly and outwardly laterally from the central portion thereof for a distance to space the ends by an amount corresponding to the spaced relationship between the handle portions, a pair of leg members formed to V-shape with the upper ends of the V-shaped members being connected to longitudinally spaced apart portions of the handle pieces and means connecting the downwardly extending portion of the cross brace member with the apex portions of the leg members, a wheel and means rotatably mounting the wheel between the front pieces of the handle members.

3. A wheelbarrow as claimed in claim 2 in which the handles are wooden handles.

4. A wheelbarrow as claimed in claim 2 in which the bumper plate comprises a channel shaped member bent to U-shape with the central bail portion dimensioned to have a length corresponding to the spaced relationship between the ends of the handles.

6. A wheelbarrow as claimed in claim 2 in which the cross brace member comprises an intermediate portion of channel shape with the channel sections outwardly thereof.

7. A wheelbarrow as claimed in claim 2 in which the member extending downwardly and outwardly laterally from the central portion of the cross brace member comprises arms extending integrally laterally and downwardly from the central portion of the cross brace member for a distance corresponding to the spaced apex portions off the leg members.

8. A wheelbarrow as claimed in claim 7 in which the arms have flattened end portions lying in abutting relationship with the apex portions of the leg mem-

bers and in which the means interconnecting the leg members to the cross brace members comprises means interconnecting the flattened end portions with the adjacent apex portions of the leg members.

10. A wheelbarrow as claimed in claim 2 in which the connection between the longitudinally spaced apart portions of the handle pieces and the upper end portions of the leg members include the bowl to rigidly secure the handle pieces, leg members and bowl together in their assembled relationship.

Additionally, the Court notes, although the issue was never raised by either of the parties, that included in the specification, but in none of the claims, are filler strips (20), one of which is positioned between each of the handles and the bowl. According to the specification, the preferred practice involves the use of a filler strip in the form of a wedge shaped channel member secured as by welding to the underside of the bowl and secured by bolts to the handles. In the alternative, the specification suggests that a wooden filler strip (105) may be used, in which case bolts would extend through the filler strip and the bowl to connect the two. The evidence indicates that all of the wheelbarrows of the plaintiff which are said to be made in accordance with the '600 patent and all of the accused wheelbarrows of the defendant include such a wooden piece.

### PLAINTIFF'S AND DEFENDANT'S ARGUMENTS

The plaintiff asserts that its '600 patent is valid and that the defendant's wheelbarrow models 411–411, 411–451, and 411–551 infringe the patent. The parties have stipulated and agreed that these models of wheelbarrows are manufactured and sold by MTD within this district.

Radio also argues that the alleged infringement by MTD has been willful and wanton, and therefore that this is an exceptional case within the meaning of 35 U.S.C. § 285.

The defendant asserts that the '600 patent is invalid pursuant to 35 U.S.C. § 102 for the reason that the subject matter thereof is anticipated by the prior art, pursuant to 35 U.S.C. § 103 for the reason that the differences between the subject matter of the claims and the prior art would have been obvious at the time the invention was made to one having ordinary skill in the art, pursuant to 35 U.S.C. § 112 for the reason that the claims failed to particularly point out and distinctly claim the subject matter of the invention, and pursuant to the principle of law enunciated in *Lincoln Engineering Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1937), and other cases following the same. MTD also asserts that the '600 patent, even if valid, is not infringed by any wheelbarrow made by MTD.

Additionally, the defendant contends that Radio has improperly filed and maintained its action against MTD in bad faith, and therefore that this is an exceptional case within the meaning of 35 U.S.C. § 285.

Upon consideration, for the reasons stated below, it is the determination of this Court that the '600 patent is valid but not infringed by the defendant.

### VALIDITY

Before beginning its analysis, the Court takes note of the point made by the plaintiff that decisions of district courts in patent cases are now reviewed by the United States Court of Appeals for the Federal Circuit, which was established October 1, 1982. It seems clear to this Court that decisions of the Federal Circuit Court as to patent matters will become binding upon the district courts in such cases.

As the plaintiff further indicates, the Federal Circuit Court, in its opinion in the first appeal it heard, held that the holdings of its "predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, ... shall be binding as precedent in this Court." *South Corp. v. United States,* 690 F.2d 1368, 1369 (Fed.Cir.1982). This development, of course, does not render inapplicable the pre-

vious decisions of other circuit courts of appeals in patent actions. After all, the true predecessors of the new court in regard to appeals from decisions of district courts in patent cases are the other circuit courts.

Accordingly, this Court will continue to follow the decisions of the Sixth Circuit, and to refer to the decisions of other circuits for guidance where no Sixth Circuit precedent exists, unless a contrary ruling has been made on a particular point of patent law by the new Federal Circuit Court or one of those courts whose holdings it has adopted as precedent.

Additionally, prior to analyzing the patent for validity, an understanding of the nature of the claimed invention disclosed by the patent is necessary. The defendant contends that the plaintiff's invention, if any, is limited to the channel shaped sections on the opposite ends of the cross brace member to receive the handle portions in fitting relationship within the channel sections. To the contrary, the plaintiff asserts that the channel shaped ends of the cross brace are not even a significant feature of the claimed invention, but that instead it is the totality of several elements and their interrelationship which cooperate to form a patentable invention. The plaintiff thus having abandoned any interest it might arguably have had solely with respect to the channel shaped ends of the cross brace, the '600 patent will be analyzed on the basis of its asserted description of a new and improved complete wheelbarrow.

■ The patentability of any claimed invention is dependent upon the three essential characteristics of novelty, utility, and non-obviousness, which are codified in 35 U.S.C. §§ 101–103, and which constitute separate tests, each of which must be met in order for a patent to be valid. *United States v. Adams,* 383 U.S. 39, 48, 86 S.Ct. 708, 712, 15 L.Ed.2d 572 (1966); *American Seating Co. v. National Seating Co.,* 586 F.2d 611, 615 (6th Cir.1978), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). These essential characteristics derive from the standard of patentability ex-

pressed in Article I, § 8, Clause 8 of the Constitution, which states that patents are to be granted to "promote the Progress of ... useful Arts, by securing for limited Times to ... Inventors the exclusive Right to their ... Discoveries."

■ Moreover, a patent may be faulty and thus invalid if it fails to meet the requirement of 35 U.S.C. § 112 that it particularly point out and distinctly claim the invention.

*Presumption of Validity*

■ The starting point in analyzing a challenge to a patent's validity is the statutory presumption that the patent is valid under 35 U.S.C. § 282, which states in part:

A patent shall be presumed valid. The burden of establishing the invalidity of a patent shall rest on a party asserting it.

The presumption of validity is based upon the acknowledged experience and expertise of the Patent Office and upon the fact that the issuance of a patent constitutes a type of administrative determination supported by evidence. *American Seating,* 586 F.2d at 615. The presumption has no independent evidentiary significance, however, as it merely serves to allocate to the party claiming invalidity the burden of proving it. In a typical case, where the bulk of the evidence of the prior art is contained in documents, the standard of proof is that of a preponderance of the evidence. *Eltra Corp. v. Basic, Inc.,* 599 F.2d 745, 750 (6th Cir. 1979), *cert. denied,* 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 308 (1979).

■ It is firmly established that the presumption of validity is weakened greatly where the Patent Office has failed to consider pertinent prior art. *Universal Electric Co. v. A.O. Smith Corp.,* 643 F.2d 1240, 1245 (6th Cir.1981). The degree by which the presumption is weakened in cases in which relevant prior art was not considered by the Patent Office depends upon a balancing of the pertinence of the newly cited prior art and the pertinence of the prior art actually considered by the patent examiner in the prosecution of the patent application.

*American Seating,* 586 F.2d at 615. Conversely, where the most pertinent prior art has been considered, the presumption is greatly strengthened. *Hanson v. Alpine Valley Ski Area, Inc.,* 611 F.2d 156, 159 (6th Cir.1979).

The prior art presented to the Court for consideration in this case consists entirely of earlier patents. Three patents were cited by the examiner and made of record:

| No. | 187,549 | Nutting | 1877 |
| No. | 1,622,354 | Smith | 1927 |
| No. | 1,630,975 | Smith | 1927 |

The examiner noted in his examination of the original application, which when amended resulted in the granting of the '600 patent, that he cited the Nutting patent because it shows a wheelbarrow provided with a transverse brace having depending arms, the Smith '354 patent because it shows a bumper for a wheelbarrow, and the Smith '975 patent because it shows a two-piece wheelbarrow handle and two channeled members or brackets which, along with bolts, are used to connect the handle pieces together.

All of the patents cited by the examiner, of course, describe wheelbarrows having the general combination of a wheel, bowl, handles, and supporting legs.

Other features of the cited patents are relevant to the validity of the '600 patent. The Smith '354 patent describes in claim 5 the connection of certain elements by "securing bolts passing through said hopper [known in the '600 patent as the bowl], channel bars [filler strips], arms [handles] and legs . . . ." The Smith '975 patent shows a sectional wheelbarrow capable of being "knocked down" and arranged in a carton or a similar container not much larger than a bowl for convenient packing and shipment.

In support of its position that the '600 patent is invalid, the defendant has referred to and relied upon ten other patents which were granted before the plaintiff's:

| No. | 155,084 | Harrison | 1874 |
| No. | 258,323 | Shumaker | 1882 |
| No. | 355,245 | Annin | 1886 |
| No. | 562,139 | McCabe | 1896 |
| No. | 686,298 | Hoffmann | 1901 |
| No. | 888,055 | Baker | 1908 |
| No. | 1,242,418 | Booth | 1917 |
| No. | 1,559,646 | Roemer | 1925 |
| No. | 1,578,213 | Smith | 1926 |
| No. | 3,170,707 | Millar | 1965 |

Upon examination of these patents, the Court concludes that none of them demonstrates any features disclosed by the '600 patent which are not represented in the cited art. The Baker patent, in fact, does not describe a complete wheelbarrow, but rather a wheelbarrow clip for fastening a leg to a handle in a way not practiced in the '600 patent or relevant to this analysis. Thus, while nine of the additional patents referred to by the defendant are pertinent, they teach nothing relevant which is not taught by the three patents cited by the examiner.

No pertinent prior art having been shown whose teachings were not considered by the examiner, the presumption of validity obtains.

*Definiteness And Particularity*

The Court believes that it would be wise to first consider the alleged invalidity of the '600 patent, and especially claim 1, for failure to particularly point out and distinctly claim the invention.

Title 35 U.S.C. § 112 states:

The specification shall contain a written description of the invention, and of the manner and the process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The standard of definiteness is one of reasonableness under the circumstances,

and the teachings of the prior art and the nature of the particular invention are to be considered in determining whether the claims meet the statutory requirement of definiteness and particularity. *Antonious v. ProGroup, Inc.,* 699 F.2d 337 (6th Cir. 1983).

The defendant contends that claim 1 is invalid for indefiniteness and failure to define an operable and useful device because clause (8) specifies: "a wheel, and means rotatably mounting the wheel unto the *leg members* between the forward end portions thereof" (emphasis added). In the specification, drawings, and other claims of the '600 patent, the wheel is mounted between the forward ends of the handles and not between the legs.

■ The plaintiff argues that the statement in clause (8) of claim 1 that the wheel is attached to the legs is obviously an inadvertent error which does not detract from the intended meaning of the claim. It is fundamental that claims are to be construed in light of the specification and both are to be read with a view to ascertaining the invention. *Adams,* 383 U.S. at 49, 86 S.Ct. at 713. However, the invention is measured by the claims and not by the specification. *Philips Industries, Inc. v. State Stove & Manufacturing Co., Inc.,* 522 F.2d 1137, 1140 (6th Cir.1975). The inconsistency between claim 1 and the specification, drawings, and other claims thus cannot be explained away as the plaintiff suggests. The claim itself is quite clear, and therefore, despite the plaintiff's invitation, this Court will not read "leg" to be "handle."

The defendant also contends that claim 1 describes an inoperable wheelbarrow and that the claim should be declared invalid for that reason. Although the claim describes a type of wheelbarrow not likely ever to be constructed, no evidence has been presented to support the position that such a wheelbarrow would be inoperable, and thus the Court will not so declare.

■ Having closely examined the other claims, no specific deficiencies in which have been asserted, the Court concludes that each of them also is in compliance with § 112.

*Anticipation*

■ Title 35 U.S.C. § 102 states in pertinent part:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . . .

This reason why an invention is not novel and, therefore, why a patent should not be granted is generally referred to as anticipation. The Sixth Circuit has repeatedly defined the proper standard with respect to anticipation as requiring that all the elements of a patented device or their equivalents be found in a single pre-existing structure or description. *American Seating,* 586 F.2d at 618. The Supreme Court has stated a doctrine of equivalents as follows:

[A] patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42 [50 S.Ct. 9, 13, 74 L.Ed. 147]. The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' *Machine Co. v. Murphy,* 97 U.S. 120, 125 [24 L.Ed. 935]. . . .

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. . . . Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the

other ingredients, and the function with which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

*Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608–609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

■ An examination of the prior art, including the additional ten patents relied upon by the defendant, clearly indicates that in no single pre-existing structure or description are there all of the elements of the plaintiff's patented device or their equivalents. More precisely, no one pre-existing structure or description contains both two-piece handles and a cross brace connecting those handle pieces and also including members extending downwardly and outwardly from its central portion and connecting with the bottom of the legs. The '600 patent therefore was not anticipated by the prior art.

*Non-obviousness*

Title 35 U.S.C. § 103 states:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Essentially, non-obviousness is the statutory equivalent of the requirement of "invention," derived from the Supreme Court's decision in *Hotchkiss v. Greenwood,* 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1851). *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 279, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976); *Eltra,* 599 F.2d at 751.

The Supreme Court in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the first case in which that court discussed § 103, set forth the standard of inquiry which has been followed ever since:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Graham,* 383 U.S. at 17–18, 86 S.Ct. at 693–694.

*Scope And Content Of The Prior Art*

The Sixth Circuit has defined the boundaries of "prior art" as follows:

Prior art need not be exactly the same in order to be applicable; differences between the prior art and the invention are permitted. This is to say that the mere existence of differences between the prior art and an invention does not establish the invention's non-obviousness, particularly where, as here, the prior art and the invention are substantially similar. . . .

[T]he object and the accompanying claims as well as the inferences one skilled in the art would draw from such specific disclosures, properly constitute prior art. In fact, "The prior art is all the knowledge that would have been available to any person having ordinary skill in the art." *Steelcase, Inc. v. Delwood Furniture Co.,* 578 F.2d 74 (5th Cir. 1978), *cert. denied,* 440 U.S. 960 [99 S.Ct. 1503, 59 L.Ed.2d 774] . . . (1979).

*Smith v. ACME General Corp.,* 614 F.2d 1086, 1093 (6th Cir.1980).

The scope and content of the prior art presented to the Court for consideration have already been fully described in the

section of this opinion discussing the presumption of validity.

*Differences Between The Prior Art And The Claims At Issue*

As noted previously, claim 1 of the '600 patent describes a wheelbarrow with a wheel attached to the legs. Clearly, no such arrangement of elements exists in the prior art. This difference between the claim and prior art is so extreme that no further comparison need be made.

Likewise, a comparison of the prior art and claims 2, 3, and 10, the latter two being dependent upon claim 2, need proceed no further than an examination of the cross brace member in the '600 patent and cross braces in previous wheelbarrows. Like all cross braces used in wheelbarrows, the one in the '600 patent spans the distance between and is secured to the handles. Furthermore, the '600 cross brace member also includes "members extending downwardly and outwardly laterally from the central portion thereof" and connecting with the legs at their bottom points which function in the same way and for the same purpose as the brace in the Nutting patent which "is secured centrally to the under side of the cross-piece ... and projects downwardly to the sides to form the supports or legs." None of the prior art, however, discloses "a cross brace member ... with channel sections on the outer end portions ... having a width dimensioned to correspond to the width of the handle portions to receive the handle portions therein in fitting relationship and means for securing the handle portions in the channel sections with the two pieces aligned in end to end relation and with the abutting ends in an intermediate portion of the channel section" as does the '600 patent.

The defendant contends that the Roemer patent incorporates a cross brace member and channels on its opposite ends which are not integral with the cross brace member but which, along with the cross brace member, form a structure coming within the language of claim 2 specifying "channel sections *on* the opposite end portions of the cross brace member" (emphasis added).

The defendant fails to note, however, that the channels it points to in the Roemer patent are the angularly-bent extremities of the legs, not separate channel pieces. Moreover, a reading of the '600 patent in light of the specification and drawings indicates that the channel sections are indeed integral parts of a cross brace member described as having its "end portions being formed with a down-turned portion 78, a flat horizontally disposed portion 80, and an upwardly turned end flange 82 to define a length wise channel section...." Thus, the prior art does not contain a cross brace member such as that in the '600 patent.

More important than the shape of the channel sections which have drawn so much attention in this action, though, is the fact that these end portions of the cross brace member serve to align and connect the front and rear portions of each two-piece handle. No prior art discloses a cross brace member which incorporates this additional function. Finally, it should be noted that the cross brace member of the '600 patent is described in claim 2 as extending "beneath the bowl," thus also locating the juncture of the handle pieces there, unlike the junctures of the two-piece handles in the prior art which are all located behind the bowl. This location provides a different and improved interrelationship among the elements.

*Level Of Ordinary Skill In The Art*

This Court finds as a matter of fact that the level of ordinary skill in the art of wheelbarrow design and manufacture is that level of skill possessed by the members of the plaintiff's and defendant's engineering departments responsible for the development and production of wheelbarrows. These are the people who devote regular and substantial effort to solving the type of problem that the '600 patent addresses, and who have the educational background, experience and information available to them which is necessary to solve such a problem as constructing a rugged sectional wheelbarrow with two-piece handles.

*Obviousness/Non-obviousness*

The defendant asserts that the '600 patent discloses a combination of elements all of which are old and disclosed in the prior art or, at the very most, discloses a combination which includes only one new element, that being an improved cross-brace member. Based upon this assertion, the defendant further contends that the '600 patent must meet the high standard for "combination patents" in order to be valid.

The *Stewart-Warner* case states in pertinent part:

> The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination.

303 U.S. at 549–50, 58 S.Ct. at 664–65 (footnote omitted). The Supreme Court in that case went on to conclude that the patent involved was void as claiming more than the applicant invented.

In another case involving a combination of old elements, the Supreme Court stated that "[a] combination of elements may result in an effect greater than the sum of the several effects taken separately," and that such "synergistic result" makes the combination patentable. *Anderson's-Black Rock, Inc., v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969).

■ The test for "synergism," however, need not be reached in the instant case, because the '600 patent is not a combination patent. Rather, after carefully examining the exhibits and considering the testimony, the Court finds that the multi-purpose cross brace member is not simply an improvement of an old part but is instead a new element the inclusion of which into the '600 patent yields a design for a new type of wheelbarrow. It is the totality of all the elements and their interaction with each other which is the inventor's contribution to the art of wheelbarrow making.

■ Accordingly, the Court concludes that the differences between the subject matter of the '600 patent and the prior art are such that the subject matter as a whole was not obvious at the time the invention was made to a person having ordinary skill in the art. In light of this conclusion, consideration of secondary criteria supporting validity is unnecessary.

The Court having found no violation of 35 U.S.C. §§ 102, 103, or 112, the '600 patent is hereby declared to be valid.

## INFRINGEMENT

■ The Sixth Circuit has stated that two tests must be applied in determining whether a patent has been infringed by an accused device. The first test is whether there is literal infringement of the patent. In making this determination, the words of the claim in the patent must be compared with the accused device, and if the accused device is clearly within the claim, literal infringement is established. The second test is the application of the doctrine of equivalents. *Acme Highway Products Corp. v. The D.S. Brown Co.,* 473 F.2d 849, 850 (6th Cir.), *cert. denied,* 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57 (1973).

In the *Machine Co.* case, the Supreme Court said that, in determining the question of infringement, the fact finder is to

> look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.
>
> Nor is it safe to give much heed to the fact that the corresponding device in two

machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attached. *Machine Co.,* 97 U.S. at 125.

Many pages of briefs and hours of testimony in this action have been devoted to the similarities and differences between the cross brace members of the plaintiff's patent and the defendant's wheelbarrows. There is no question that the defendant's cross brace, with its flat ends, is of a somewhat different shape than the cross brace of the plaintiff's patent, which has channel shaped sections on its opposite ends. Therefore, there is no literal infringement.

The plaintiff contends, however, that the defendant's cross brace is the equivalent of the cross brace in the '600 patent. This Court agrees. The claimed function of the end sections of the cross brace in the plaintiff's patent is to secure the handle portions with the two pieces aligned in abutting relationship to form complete handles. The flat ends of the defendant's cross brace perform this same function in substantially the same way—that is, by bridging the handle pieces and being bolted to each piece. It is true that the specification of the '600 patent states that "[t]he handle members are gripped by the channel sections 80 of the cross brace member in a manner to militate against lateral displacements or relative movements between the sections," but no such function is asserted in any of the claims of the patent. Moreover, the cross brace members combine with the other elements in the same manner and in this respect may be considered interchangeable. Therefore, if determination of infringement of the '600 patent by the defendant's wheelbarrows involved only consideration of the equivalency of the cross brace members, this Court would conclude that the patent was indeed infringed.

However, upon careful examination of the exhibits and consideration of the testimony, the Court finds that there exists a significant difference between the structure claimed in the '600 patent and that of the defendant's wheelbarrows. As noted previously in this opinion, filler strips, one of which is positioned between each of the handles and the bowl, are mentioned frequently in the specification of the '600 patent and are included in both the plaintiff's and the defendant's wheelbarrows, but are not mentioned at all in the claims of the patent. The relevant portions of the specification state:

In the preferred practice of this invention wherein use is made of a *filler strip* 20 in the form of a wedge shaped channel member secured as by welding, at 22, to the underside of the bowl in laterally spaced apart relation for attachment of the bowl to the under-carriage, the extension of securing bolts through the bottom wall 14 of the bowl 10 for attachment to the under-carriage can be eliminated, whereby the bowl presents a smooth surface which is uninterrupted by the heads of the bolts . . . .

The channel member 20, shown in greater detail in FIGS. 3 and 4, is formed with a bottom wall 24 and laterally spaced apart perpendicular side walls 26 which are secured at their upper edge, as by welding 22, to the underside of the bowl 10. The bottom walls are provided with longitudinally spaced apart key slots 28 with the key slots having an opening at one end of larger dimension to enable the heads 30 of carriage bolts 32 to pass through the openings but wherein the slots 28 are of smaller dimension than the head but of greater width than the shank of the carriage bolts to enable the latter to be displaced longitudinally therethrough to position the carriage bolts in the slot for attachment of the bowl to the under-carriage, as illustrated in FIGS. 1 and 4. Instead of making use of keyhole slots as illustrated, use can be made of slots extending inwardly from the ends of the channel members for longitudinal displacement of the carriage bolts therethrough to position of use.

. . . . .

... Openings 56 are provided to extend vertically through both the front and rear [handle] pieces in a portion spaced from the abutting ends and in position for vertical alignment with the slotted portions 28 in the *filler strips* for passage of the channel bolts 32 through said openings to effect attachment of the bowl and channel onto the handle portions....

... Thus the handle portions are secured in their assembled relation at spaced apart portions to the one piece *filler strip* on one side and to the one piece leg member on the opposite side securely to interconnect the handle portions in their assembled relationship one to the other and to the bolt.

... The channel sections in the opposite ends of the cross brace member 72 are spaced one from the other by an amount to correspond with the spaced relationship between the pair of handle pieces and the *filler strips* so as to receive the lower portions of the handle pieces, at their abutting ends, in fitting relationship within said channel sections of the cross brace members. The elements are secured in their assembled relationship by bolt and nut means 88 wherein the elongate bolts extend downwardly through the aligned openings in the handle pieces and the channel members 80 with a threaded end portion extending through and beyond the channel members threadably to receive a fastening nut. In the preferred practice, the head of the bolt can be welded directly unto the underside of the metal *filler strip* 20 to form a part thereof or else it can be inserted into the channel bracket of the *filler strip* by providing additional longitudinally aligned key slots of the type previously described and arranged to position the bolts in vertical registry with the aligned openings in the abutting ends of the handle pieces and the channel section of the cross brace member.

. . . . .

As shown in FIG. 3 of the drawing, the entire assembly can be broken down into separate pieces including the leg members 60, the cross brace member 72, the bumper 46, the two piece handle portions 40a and 40b and the bowl 10 with the attached *filler strips* of channel section 20....

In assembly, the carriage bolts 32 are positioned on the channel brackets. The center bolts 88 are inserted through the aligned openings in the handle portions and then the openings in the channel sections on the ends of the cross brace members are brought into position so that the threaded ends of the bolts 88 will extend therethrough and the nut members are thereafter threaded unto the through-extending portions to interconnect the spaced portions of the aligned handle sections with the one piece cross brace member and the one piece longitudinally extending *filler strip.*

The carriage bolts 32 on the outer ends of the *filler strips* are inserted through the outer of the spaced openings of the handle members and through the underlying openings in the flanges 66 at the upper ends of the leg members 64 and the nut members 70 are threaded onto the through-extending threaded end portion to interconnect the *filler strip,* leg members and additionally spaced portions of the handle sections....

The *filler strip* in the form of the metal channel bracket 20 of FIGS. 1 and 4 can be replaced with a wooden *filler strip* of the type shown in FIG. 5 wherein the *filler strip* 105 is formed with the same four spaced apart openings 104 and 106 for the passage of the carriage bolts therethrough but wherein the filler strip is countersunk, as at 108, about the center openings 106 to enable the head of the carriage bolt to be received therein. In the use of the wooden *filler strip* of FIG. 5, the bottom wall of the bowl is formed with openings adapted to be aligned with the outer openings 104 in the *filler strips* for the insertion of the carriage bolts therethrough. In such event, the heads of the bolts will project upwardly from the bottom wall of the bowl unless the latter is countersunk.

The *filler strips* are tapered, as illustrated, to compensate for the angle which the handles make with the horizontal so that, when the *filler strips* are disposed between the handle portions and the underside of the bowl, the latter will be substantially horizontally disposed for fuller utilization of the capacity of the bowl.

. . . In the assembled relation, each handle piece is secured in longitudinally spaced apart relation to the *filler strip* with one portion connected to the horizontally spaced apart portions of the one piece foot member while other portions are secured to the one piece cross brace member. Thus the handles are rigidly secured in the assembly. . . . The supported legs of the cross brace member are inclined toward the foot piece of the leg members in a manner to prevent spread thereby to provide a rigid support while the legs of the foot members are fixed in their longitudinally spaced apart relation to the longitudinally spaced apart portions of the one piece *filler strip* to prevent spread or relative movements therebetween. The members are thus interconnected one to another in the assembly to provide a strong and fixed assembly having strength and stability as great as, if not greater than, that capable of being achieved by pre-assembled units of the type heretofore produced. (emphasis added)

Thus, inclusion of filler strips accomplishes several functions, including:

1. In the preferred practice employing a metal filler strip, indicated in FIGS. 1–4, the elimination of the need to extend the securing bolts through the bottom of the bowl (in the alternative practice employing wooden filler strips, indicated in FIG. 5, this advantage is not achieved);

2. The rigid and secure assembly of the bowl, handle pieces, and leg members; and

3. The substantial leveling of the bowl for fuller utilization of its capacity.

Pieces such as the filler strips are not new elements in the design and construction of wheelbarrows, but rather were well

known in the prior art and were included in the Millar, Roemer, and all three Smith patents. Inclusion of such pieces is not necessary, of course. The Nutting, Harrison, and Annin patents demonstrate that handles may be attached to the underside of a bowl without such pieces.

The Sixth Circuit has consistently held that specific elements, absent in the claims, may not be inferred by reference to the specification. *Antonious,* 699 F.2d at 340; *Philips,* 522 F.2d at 1140.

The wheelbarrow described in claim 1 is stated to be formed of separable parts including "means for connecting the handles in their laterally spaced apart relationship to the underside of the bowl." Limited by *Antonious* and *Philips,* this Court cannot infer that the term of art, i.e., "means," acts to incorporate into the claim the filler strips and all the functions they provide. Claim 2 likewise makes no specific reference to filler strips, but states only that "a pair of elongate handles [are] secured to the underside of the bowl . . . ."

■■■■ The question thus presented is whether the claims of the '600 patent, which do not contain filler strips, are infringed by the defendant's wheelbarrows, all of which do contain them. The Court is well aware that an accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent. *Acme Highway Products,* 473 F.2d at 855. In the defendant's wheelbarrows, however, the filler strips are not simply add-ons, but are integral structural components included for the very purposes stated in the '600 patent's specification. Just as the inclusion into the '600 patent of the multi-purpose cross brace results in a new type of wheelbarrow with a new, improved, and specific interaction among its elements, so the inclusion into the defendant's wheelbarrows of filler strips, although not new elements, creates a different structure. The plaintiff's own witness, Frederick J. Micheleau, stated with reference to the structure shared by the plaintiff's and defendant's products:

What is unique about this wheelbarrow, that load will push on this handle to form it to flex or bend, in essence trying to break it at some point. . . .

By investigating it, you can see when the load is pushing down on these handles the load is transferred through the pole bowl, through the *filler pieces* onto these handles, causing them to flex. You can see the forces are forced onto this cross brace member, transmitted in a downward motion into the cross brace, in turn forcing on the legs, in turn bolted to the legs, forming one essentially strong essential element.

. . . . .

Yes, it is a combination of the total structure, taking the bowl held with the bolts, the *filler piece,* the handles, the legs, cross brace and cross bar. (emphasis added)

Transcript at 145–146. It is the conclusion of this Court that the defendant's wheelbarrows, although bearing a striking resemblance to the plaintiff's products, simply do not infringe upon the plaintiff's patent.

## EXCEPTIONAL CASE/ATTORNEY FEES

█ Title 35 U.S.C. § 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The Sixth Circuit has consistently held that in order to support an award of attorney fees in a patent case there must be a showing of conduct which is unfair, in bad faith, inequitable, or unconscionable. Only the most frivolous of allegations should give rise to an award of attorney fees under § 285. *Eltra,* 599 F.2d at 758.

█ In light of this Court's holding that the plaintiff's patent, though valid, describes a type of wheelbarrow—actually, two different types of wheelbarrows, considering the different wheel placement in each of the independent claims—unlike those made by either the plaintiff or the defendant, and in light of the fact that the key to the defendant's non-infringement was discovered by neither party, this Court cannot find that this case is "exceptional" within the meaning of § 285.

Each party shall pay its own costs.

## JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion contemporaneously filed, IT IS ORDERED, ADJUDGED, and DECREED that the plaintiff's United States Letters Patent No. 3,282,600 is valid but not infringed by the defendant's products. Judgment is entered in favor of the defendant and against the plaintiff on all aspects of the plaintiff's complaint except validity and in favor of the plaintiff and against the defendant on the defendant's counterclaim. Each party shall pay its own costs. Plaintiff to pay the court costs.

APPENDIX A

Nov. 1, 1966 R. TONELLI 3,282,600

WHEELBARROW

Filed April 29, 1964 2 Sheets—Sheet 1

## FIG. 1

## FIG. 2

INVENTOR
Roger Tonelli

By McDougall, Hersh & Scott
Att'ys

Nov. 1, 1966 R. TONELLI 3,282,600

WHEELBARROW

Filed April 29, 1964 2 Sheets—Sheet 2

FIG. 3

FIG. 5

FIG. 4

INVENTOR
Roger Tonelli

By McDougall, Hersh & Scott
Attys