**RADIO STEEL & MFG. CO.,**
**Appellee/Cross-Appellant,**

v.

**MTD PRODUCTS, INC.,**
**Appellant/Cross-Appellee.**

**Appeal Nos. 85–2599, 85–2627.**

United States Court of Appeals,
Federal Circuit.

April 18, 1986.

Charles R. Rust, Woodling, Krost, Rust & Hochberg, Cleveland, Ohio, for appellant/cross-appellee.

Robert W. Slater, McDougall, Hersh & Scott, Chicago, Ill., for appellee/cross-appellant. With him on brief was James R. Ryther. Thomas E. Fisher and Daniel J. Sammon, Watts, Hoffman, Fisher & Heinke Co., L.P.A., Cleveland, Ohio, of counsel.

Before FRIEDMAN, BALDWIN, and NEWMAN, Circuit Judges.

FRIEDMAN, Circuit Judge.

These are an appeal and a cross-appeal from a judgment of the United States District Court for the Northern District of Ohio, awarding damages in the accounting phase of a patent infringement suit. The infringer contends that the damages were excessive. The patentee contends that the damages were inadequate because the district court should have held that the infringement was willful and awarded enhanced damages and attorney fees. We affirm.

## I

The case involves U.S. Patent No. 3,282,-600, owned by Radio Steel & Mfg. Co. (Radio Steel). The patent covers an improved wheelbarrow. The complaint alleged that MTD Products, Inc. (MTD), had manufactured and sold wheelbarrows that infringed the patent. After trial, the district court held that the patent was valid but not infringed. *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 566 F.Supp. 609, 220 USPQ 35 (N.D.Ohio 1983). In a previous appeal, 731 F.2d 840, 221 USPQ 657 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984), we affirmed the district court's holding of patent validity, reversed its holding of noninfringement, and remanded the case for an accounting.

Following a trial in the accounting phase of the case, the district court awarded Radio Steel damages of $588,719.93 plus post-judgment interest and costs. The court found that "[t]he overwhelming majority of MTD's sales of the infringing wheelbarrows was to three retail store chains: White Stores, Montgomery Ward, and K-Mart." It determined that Radio Steel was entitled to recover lost profits on MTD's sales to K-Mart and the White Stores, which it calculated at $296,937.21. On MTD's sales to stores other than those two, the court ruled that Radio Steel was entitled to a reasonable royalty of ten percent, which amounted to $155,634.81.

The district court's combined damage award of $588,719.93 included prejudgment interest. The court rejected MTD's contention that Radio Steel was not entitled to prejudgment interest because it had allowed patent notices to remain on its wheelbarrows after the patent had expired.

The court held that MTD's infringement was not willful and therefore declined to enhance the damages or to award attorney fees.

## II

In its appeal, MTD contends that (A) the award of lost profits was improper, (B) the ten percent royalty rate was excessive, and (C) Radio Steel's failure to remove patent markings from its wheelbarrows after the patent had expired barred the award to it of prejudgment interest.

A. *Lost Profits.* In awarding lost profits, the district court applied the standard announced in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978), which we implicitly approved in *Central Soya Co., Inc. v. George Hormel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983). Under *Panduit*, to receive lost profits a patent owner must prove:

> (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made.

*Panduit, supra* at 1156, 197 USPQ at 730. The district court found that Radio Steel had proved the four elements of *Panduit*

with respect to sales MTD made to K-Mart and the White Stores.

On appeal, MTD challenges only the district court's finding that there were no acceptable noninfringing substitutes. That was a finding of fact that we can reverse only if it is clearly erroneous. *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 222 USPQ 4 (Fed.Cir.1984); *see also Anderson v. City of Bessemer,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). MTD has not shown that the finding has that fatal flaw.

The district court found that

the patented wheelbarrow has several attributes which demonstrate an absence of substitutes. The patented wheelbarrow could be shipped unassembled, thereby allowing more compact shipping with lower shipping costs. The wheelbarrows could be easily assembled at the stores.... The absence of the "shin scraper" brace along the rear of the legs, which was necessary in other wheelbarrows to achieve structural regidity [sic], also added to the popularity of the patented wheelbarrow.... Although other noninfringing contractor-type wheelbarrows exist in the market, such wheelbarrows are not acceptable substitutes for the patented product.

MTD contends, however, that

wheelbarrows for many years past ... perform the *same function* of transporting a load contained in a bowl or tray on one wheel propelled by an operator holding the handles on which the bowl or tray is mounted and propelling the assembly on the single wheel. All wheelbarrows which have been on the market produce this result and are available acceptable substitutes.

Some of these wheelbarrows ... have two-piece handles which facilitate packaging of the parts of the wheelbarrow, and these too are available acceptable non-infringing wheelbarrows.

This argument is another formulation of the contention, rejected twice by the district court and once by this court, that the patent simply was a combination of old elements. It ignores the district court's earlier ruling in the liability phase that "[i]t is the totality of all the elements and their interaction with each other which is the inventor's contribution to the art of wheelbarrow making." 566 F.Supp. at 619, 220 USPQ at 43. It also ignores the statement in our prior opinion that "as the district court held, the '600 patent 'descri[bed] ... a new and improved complete wheelbarrow.'" 731 F.2d at 845, 221 USPQ at 661. The various wheelbarrows to which MTD refers incorporate only some, but not all, of the elements of the patent. They do not establish that the district court's finding that these were not acceptable noninfringing substitutes is clearly erroneous.

B. *Reasonable Royalty.* The district court's determination that ten percent was a reasonable royalty on MTD's sales to stores other than K-Mart or White Stores reflected the court's own independent judgment and was not based upon the court's acceptance of the evidence of either party. Indeed, the court rejected the reasonable royalty figures of both parties.

The district court rejected MTD's estimate of two percent, stating that it did not find that figure to be a reasonable royalty. It observed that Radio Steel lost sales not only of the patented wheelbarrows, but also of collateral items that are normally attendant to the sales of wheelbarrows, such as garden carts and lawn mowers. The court also noted that MTD made substantial sales to White Stores, Montgomery Ward, and K-Mart of noninfringing wheelbarrows with the sale of the infringing wheelbarrows.

The court rejected Radio Steel's figure of twenty-one percent, indicating its view that that amount, which is two-thirds of Radio Steel's incremental profit, was too high a royalty for a patent that would expire in three years. The court also expressed concern that Radio Steel's twenty-one percent figure would allow the company to collect unreasonably high royalties from MTD's sales to Montgomery Ward, with whom Radio Steel had been unable to establish a

regular and consistent merchandising arrangement. The court concluded that

> [c]onsidering the age of the patent, the patent's novelty and contribution to the industry, Radio Steel's unwillingness to license, the profit margin on the wheelbarrows, the availability of wheelbarrows from other manufacturers, and the collateral sale benefits, the Court finds 10% to be a reasonable royalty on MTD's sale of wheelbarrows to other than K-Mart and the White Stores.

MTD challenges the ten percent royalty on two grounds.

1. MTD asserts that ten percent is unreasonably high because it far exceeds the profit MTD actually made on the infringing wheelbarrows. It relies on testimony by its treasurer that the profit MTD made on the sale of infringing wheelbarrows was low, and that in one year it had a loss on those sales.

■ The determination of a reasonably royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began. *Panduit,* 575 F.2d at 1158, 197 USPQ at 731. Moreover, the district court could well have discounted MTD's profit figures because the treasurer also testified that the infringing wheelbarrows might have been utilized as loss-leaders at various times during the period of infringement.

2. MTD contends that ten percent is not commensurate with the "patent's novelty and contribution" to the industry. MTD contends that the patent's "contribution, if any, consisted of forming channels on the ends of the cross-brace member as demonstrated at the trial on liability." MTD continues:

> [Radio Steel] did not invent the wheel, nor the bowl or tray, nor the supporting legs, nor the handles and certainly not two-piece handles which are useful in the packaging of the wheelbarrow parts. Wheelbarrows are extremely old and any contribution to the world's knowledge of wheelbarrows must of necessity be of a

minute scale. The cost of forming channels on the ends of the cross-brace member, is to be compared to the cost of the wheel, the bowl or tray, the legs, and the handles. The value of each of the parts is commensurate with the cost. The importance of each of these parts is to be considered. The wheel is important; the bowl or tray is important; the legs are important; and the handles (one piece or two pieces) are important.

This is but another phrasing of the argument, which we have rejected in our discussion of lost profits, that the patent is only a combination of old elements and that their aggregation constituted a "minuscule" and "meager" contribution to the art.

■ The record fully supports the district court's selection of a ten percent reasonable royalty. MTD's treasurer testified that at the time of infringement, MTD expected to make a net profit of about six percent on its sale of infringing wheelbarrows. Radio Steel's vice president of finance testified that its net profit from its sales of patented wheelbarrows was ten plus-or-minus two percent. On this record we have no basis for rejecting the district court's selection of ten percent as a reasonable royalty rate. *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 218 USPQ 481 (Fed.Cir.1983).

■ *C. Prejudgment Interest.* MTD contends that Radio Steel was equitably barred from receiving prejudgment interest because it failed to remove its patent notice from its wheelbarrows for one-and-one-half years after the patent expired. The district court rejected this contention because "MTD has not shown it suffered from such actions of Radio Steel, and the Court fails to see the relevance of such actions to the infringement in question."

We agree with that ruling.

MTD argues that *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), indicated that prejudgment interest may be denied to a prevailing patentee in an infringement suit

under certain circumstances. The only example the Supreme Court gave was a case in which a patentee unduly delays the prosecution of an infringement suit. *Id.* at 657, 103 S.Ct. at 2063. The actual holding in *General Motors* was that "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Id.* The justification to which the Supreme Court referred must have some relationship to the award of prejudgment interest, which award the Court held "is necessary [in the typical case] to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Id.* at 655, 103 S.Ct. at 2062 (footnote omitted).

MTD has not shown why Radio Steel's failure to remove the patent markings from its wheelbarrows for a brief period after the patent had expired warrants denying Radio Steel the prejudgment interest that is necessary to restore the patentee to the position in which it would have been had there been a reasonable royalty agreement. *See Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co., Inc.,* 786 F.2d 1124 (Fed.Cir.1986). Radio Steel's nonremoval of the markings is irrelevant because Radio Steel was awarded damages for infringement only during the term of the patent. The award of prejudgment interest to Radio Steel does not reward it for any wrongful activity on its part during the time relevant to this suit.

## III

In its cross-appeal, Radio Steel contends that the district court should have found that the infringement was willful and therefore should have awarded enhanced damages under 35 U.S.C. § 284 (1982) and attorney fees under 35 U.S.C. § 285 (1982).

The district court found that in August 1980, MTD offered at a trade show a prototype of a wheelbarrow that Radio Steel considered to infringe the patent. Radio Steel notified MTD of the potential infringement. Upon receiving the notice from Radio Steel, MTD obtained an opinion from outside patent counsel who, upon examining the patent, informed MTD that he believed the patent was invalid, but suggested design modifications that would avoid infringement. MTD's patent counsel did not obtain the prosecution history of Radio Steel's patent prior to rendering his opinion.

The district court concluded that the infringement was not willful. It stated that

MTD did contact outside patent counsel for a determination of infringement and took affirmative steps to avoid infringement. When MTD received a second notice from Radio Steel stating that Radio [Steel] believed the modified wheelbarrow infringed the patent, MTD was acting under the good faith belief that its wheelbarrow did not infringe the patent.

Radio Steel contends that under our decisions MTD was not entitled to rely upon the opinion of its patent counsel given under the circumstances that here existed.

The record shows that MTD's patent counsel gave his opinion on validity and infringement at a meeting held shortly after Radio Steel gave the notice of infringement to MTD. At that meeting, counsel examined the patent, an accused MTD wheelbarrow, and some MTD drawings. Counsel, however, did not review the prior art or the prosecution history of the patent. Counsel concluded that the accused wheelbarrow literally infringed the Radio Steel patent but that the patent was invalid. He suggested a design modification to avoid literal infringement. The opinion he gave at the meeting was not reduced to writing.

Radio Steel argues that under *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 225 USPQ 985 (Fed.Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985), *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 221 USPQ 1 (Fed.Cir. 1984), *Central Soya Co., Inc. v. George A. Hormel & Co.,* 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983), and *Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 219 USPQ 569 (Fed.Cir.1983), "an infringer may not in good faith, justifi-

ably rely on the opinion of counsel and proceed in the face of a known patent unless counsel's advice is 'competent', 'authoritative', or 'contains sufficient internal indicia of credibility to remove any doubt that (the infringer) in fact received a competent opinion.'"

As we have indicated, however, the various factors we have discussed in those cases are just that: factors the district court is to consider in determining willfulness. In making that determination, it "is necessary to look at 'the totality of the circumstances presented in the case.'" *Central Soya*, 723 F.2d at 1577, 220 USPQ at 492.

In those cases we referred to the facts relating to opinions by patent counsel to explain why the factual finding in each case of willful infringement was not clearly erroneous. *Underwater Devices, supra* at 1390, 219 USPQ at 576. We have never suggested that unless the opinion of counsel met all of those requirements, the district court is required to find that the infringement was willful.

■ In this case, the district court found that MTD, after being notified of possible infringement on its part, obtained a validity and infringement opinion from an outside patent attorney. Based on that opinion, MTD made the design modifications its patent attorney suggested, to avoid possible infringement of the patent. The district court held that "MTD was acting under the good faith belief that its wheelbarrow did not infringe the patent."

Radio Steel argues that the opinion MTD received was so inadequate that MTD could not reasonably have relied upon it. Radio Steel points out that the opinion was oral and not based upon even a cursory study of the patent's prosecution history or the prior art. These facts, however, do not invalidate the district court's conclusion that MTD manufactured and sold its wheelbarrow in the good faith belief that it was not infringing the Radio Steel patent.

This is not a case in which an outside patent attorney initially was reluctant to give an oral opinion based on the facts before him, but was pressured or coerced into doing so by his client, or in which the client previously had received a number of carefully prepared written opinions but in the particular case had acted on the basis of an oral, almost off-the-cuff opinion. In those situations the opinion of counsel might not suffice to establish nonwillfulness. In the present case, however, the district court considered the factors on both sides and concluded that MTD's infringement was not willful. We cannot reverse that determination as clearly erroneous.

Radio Steel raises two other issues relating to willfulness: "(1) whether MTD's conduct before contacting its counsel was willful; [and] (2) whether, if such conduct was willful, MTD could cure its willful conduct by subsequently contacting counsel ...." These questions relate to the prototypes MTD first manufactured.

This whole litigation, however, has centered around the commercial wheelbarrows that MTD sold to K-Mart, White Stores, Montgomery Ward, and others, which incorporated flat ends on their cross-brace members. The prototype wheelbarrows, however, had cross-brace members with channels on the ends. The district court made no findings on whether those prototypes infringed the patent, and the issue was not raised in the prior appeal. In these circumstances, we decline to consider whether the alleged infringement by the prototype wheelbarrows was willful.

The judgment of the district court is affirmed.

AFFIRMED.