## In re the HEARST CORPORATION.

### No. 92–1063.

United States Court of Appeals, Federal Circuit.

Dec. 21, 1992.

Robert C. Faber, Ostrolenk, Faber, Gerb & Soffen, New York City, argued, for appellant. With him on the brief, was Teresa L. Schwartz, of counsel.

Albin F. Drost, Deputy Sol., Office of the Sol., Arlington, VA, argued, for appellee. With him on the brief, were Fred E. McKelvey, Sol. and Richard E. Schafer, Associated Sol.

Before NEWMAN, ARCHER, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The Hearst Corporation appeals the decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, refusing Hearst's application to register the trademark VARGA GIRL for calendars on the ground of likelihood of confusion with the registered trademark VARGAS for calendars and similar goods.[1]

### Background

The VARGA GIRL trademark, owned by Esquire Magazine and its successor in interest Hearst Corporation, was used in association with drawings published in Esquire Magazine during the World War II era. The artist was Alberto Vargas. The VARGA GIRL drawings were also used or authorized for use on calendars, playing cards, greeting cards, post cards, and date books. These uses were apparently discontinued, for the application in suit, filed in December 1985 to register VARGA GIRL for calendars, states use since July 1985.

The Board refused the registration, on the ground of likelihood of confusion with the registered trademark VARGAS. VARGAS is registered for use with "posters, calendars, greeting cards, paintings, limited edition prints, books of images and art work, and art prints", the registration reciting first use in December 1977. The drawings in both cases are by the artist Alberto Vargas, although the Board has pointed out that the applicant's proposed registration is not restricted as to the theme of the VARGA GIRL calendars. This appeal followed.

1. *In re the Hearst Corp.*, Serial No. 73/572,719    (TTAB Sept. 10, 1991).

## Discussion

Determination of likelihood of confusion under section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), is reviewed as a question of law based on findings of relevant underlying facts. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984). The factual considerations are compiled in *In re E.I. duPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). The principal factors relevant to this case relate to the similarity *vel non* of VARGA GIRL and VARGAS, and the identity of goods (calendars) and channels of trade.

The Board, analyzing the marks for confusing similarity, found that "varga" was the dominant element of the VARGA GIRL mark, and that "girl" was merely descriptive and thus could not be afforded substantial weight in comparing VARGA GIRL with VARGAS. The Board erred in its analytic approach. Although undoubtedly "varga" and "vargas" are similar, the marks must be considered in the way they are used and perceived. *See In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed.Cir.1985). Marks tend to be perceived in their entireties, and all components thereof must be given appropriate weight. *See Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed.Cir.1992).

The appearance, sound, sight, and commercial impression of VARGA GIRL derive significant contribution from the component "girl". By stressing the portion "varga" and diminishing the portion "girl", the Board inappropriately changed the mark. Although the weight given to the respective words is not entirely free of subjectivity,[2] we believe that the Board erred in its

diminution of the contribution of the word "girl". When GIRL is given fair weight, along with VARGA, confusion with VARGAS becomes less likely.

Hearst also asserts that the fame of its mark was not accorded sufficient weight in the Board's analysis. However, the issue was not developed, and we need not consider it in view of our conclusion that the marks VARGA GIRL and VARGAS are sufficiently different in sound, appearance, connotation, and commercial impression, to negate likelihood of confusion in terms of § 2(d) of the Lanham Act.

REVERSED.

---

2. We illustrate the fact-dependency of such determinations with some random samples: *compare Keebler Co. v. Murray Bakery Products*, 866 F.2d 1386, 9 USPQ2d 1736 (Fed.Cir.1989) (PECAN SANDIES not confusingly similar to PECAN SHORTEES); *Land–O–Nod Co. v. Paulison*, 220 USPQ 61 (TTAB 1983) (CHIROPRACTIC and CHIRO–MATIC not confusingly similar); *In re Bed and Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed.Cir.1986) (BED AND BREAKFAST REGISTRY and BED AND BREAKFAST INTERNATIONAL not confusingly similar);

*and Wooster Brush Co. v. Prager Brush Co.*, 231 USPQ 316 (TTAB 1986) (POLY PRO and POLY FLO not confusingly similar); *with Squirtco v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937 (Fed.Cir.1983) (SQUIRT SQUAD confusingly similar to SQUIRT); *In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337 (CCPA 1978) (ERASE confusingly similar to STAIN ERASER); *and Geo A. Hormel & Co. v. Hereford Heaven Brands, Inc.*, 341 F.2d 158, 144 USPQ 493 (CCPA 1965) (SIZZLE confusingly similar to LITTLE SIZZLERS).