NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: DAVID COPELAND-SMITH,**
*Appellant*

---

2018-1968

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 85498107.

---

Decided: November 12, 2019

---

JILL MARIA PIETRINI, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, for appellant. Also represented by PAUL BOST.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS L. CASAGRANDE, BENJAMIN T. HICKMAN, CHRISTINA J. HIEBER, COKE MORGAN STEWART, MARY BETH WALKER.

---

Before LOURIE, REYNA, and HUGHES, *Circuit Judges.*

PER CURIAM.

David Copeland-Smith appeals from an order of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("the Board") refusing his application to register the mark BEAST MODE SOCCER for t-shirts and soccer balls. J.A. 1–18. For the reasons set forth below, we *affirm*.

BACKGROUND

Copeland-Smith is a soccer coach. For years, he has been training soccer players under his mark BEAST MODE SOCCER, which was registered on August 14, 2012, for "coaching services in the field of soccer; providing group coaching and learning forums in the field of soccer" in International Class 41. J.A. 494–98. In conjunction with his coaching, Copeland-Smith began selling merchandise, including t-shirts and soccer balls. In 2011, Copeland-Smith filed Application 85/498,107 in which he sought registration of the standard character mark BEAST MODE SOCCER for "T-shirts" in International Class 25 and for "sporting goods and equipment for soccer training, namely, balls" in International Class 28. J.A. 21–26, 30, 619–21. In an amendment, Copeland-Smith disclaimed any exclusive right in the non-distinctive term SOCCER except as part of the entire mark BEAST MODE SOCCER. J.A. 30.

The Examining Attorney refused registration of Copeland-Smith's mark under § 2(d) of the Lanham Act on the basis that it was likely to cause confusion with two registered marks for BEAST MODE owned by retired NFL football player Marshawn Lynch: U.S. Reg. 3,650,781 for "T-shirts" and U.S. Reg. 4,254,213 for "Men's, women's and children's clothing, namely, shirts, sweatshirts; headwear, namely hats, caps." The Examining Attorney found that, "[b]ased on the virtually identical nature of the marks, the marks are confusingly similar." J.A. 64. Copeland-Smith responded that Lynch's BEAST MODE marks are "weak

due to the existence of multiple third party uses and registrations of trademarks featuring BEAST MODE," and submitted examples of such uses and registrations for a variety of goods and services. J.A. 93, 141–504. The Examining Attorney remained unpersuaded and entered a final refusal, observing that the third-party uses and registrations were "generally not for clothing or sporting goods and equipment" and therefore did not show that Lynch's registrations were weak for those uses. J.A. 587–616.

The Board affirmed the Examining Attorney's refusal. Based on the arguments and evidence in the record, the Board concluded that Copeland-Smith's mark BEAST MODE SOCCER for t-shirts and soccer balls is likely to cause confusion with Lynch's mark BEAST MODE for t-shirts and other clothing. J.A. 17–18. Copeland-Smith appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Under § 2(d) of the Lanham Act, a mark may be refused registration on the principal register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark. 15 U.S.C. § 1052(d). Likelihood of confusion is a legal determination based on underlying findings of fact relating to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973), referred to as the "*DuPont* factors." Not all of the *DuPont* factors are necessarily relevant or of equal weight, and any one of them may control in a given case depending on the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1355 (Fed. Cir. 2011). Only the *DuPont* factors "of significance to the particular mark need be considered" in the likelihood of confusion analysis. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010).

We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence, but we review the Board's weighing of the *DuPont* factors *de novo. Id.* A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007); *see also Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

In this case, the Board considered and weighed the evidence relevant to seven of the *DuPont* factors, namely, factors 1, 2, 3, 4, 6, 7, and 8. On appeal, Copeland-Smith challenges the Board's findings only with respect to *DuPont* factors 1 and 6. For *DuPont* factor 1, Copeland-Smith argues that the Board erroneously found that his BEAST MODE SOCCER mark was similar in sound, meaning, appearance, and commercial impression to Lynch's BEAST MODE mark. For *DuPont* factor 6, Copeland-Smith argues that the Board erred in finding that the record did not establish a significant weakness in Lynch's mark. We consider each of Copeland-Smith's arguments in turn.

## A.

*DuPont* factor 1 concerns the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression. *DuPont*, 476 F.2d at 1361. "[T]he 'similarity or dissimilarity of the marks in their entireties' is a predominant inquiry" in the

likelihood of confusion analysis. *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165 (Fed. Cir. 2002).

The Board in this case found that the marks are similar because Copeland-Smith's mark incorporates the entirety of Lynch's BEAST MODE mark and adds only the disclaimed word SOCCER. J.A. 9–10. "When one incorporates the entire arbitrary mark of another into a composite mark, . . . inclusion of a merely suggestive or descriptive element, of course, is of much less significance in avoiding a likelihood of confusion." *Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1022 (CCPA 1977); *see also Am. Sec. Bank v. Am. Sec. & Tr. Co.*, 571 F.2d 564, 567 (CCPA 1978) ("While AMERICAN SECURITY BANK is a distinguishable, three-word mark, the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY."). Copeland-Smith argues that the Board erred by failing to consider the BEAST MODE SOCCER mark as a whole. Specifically, Copeland-Smith argues that the word SOCCER distinguishes his mark from Lynch's mark, and that the Board arbitrarily diminished the impact of that word within the overall mark BEAST MODE SOCCER.

Copeland-Smith characterizes the Board's analysis as a "total elimination of SOCCER" in comparing the marks. *See* Appellant's Br. 28–29 (citing *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015)). That characterization is not accurate. Here, the Board properly found that a descriptive or generic term within a mark—like the word SOCCER—is accorded less weight in forming the commercial impression of the overall mark. J.A. 9; *see Wella*, 558 F.2d at 1022. The Board analyzed the overall mark and determined that "there is no question BEAST MODE is the portion of the mark likely to be remembered and used by consumers in calling for and referring to [Copeland-Smith's] goods." J.A. 9. The Board considered each element of the mark as part of the mark as

a whole and found that the dominant shared term BEAST MODE makes the marks similar in sound, meaning, appearance, and commercial impression. J.A. 9–10. Thus, this case is not like *Juice Generation*, where we found that the Board "did not set forth an analysis showing that it avoided the error of giving *no significance* to the term." *Juice Generation*, 794 F.3d at 1341 (emphasis added).

Copeland-Smith attempts to analogize to other cases in which marks with a common term were found to be distinctive from each other. *See* Reply Br. 11–13. But none of those cases involved a common term that dominated an additional generic term in the applicant's mark. *See In re Hearst Corp.*, 982 F.2d 493, 494 (Fed. Cir. 1992) ("The appearance, sound, sight, and commercial impression of VARGA GIRL derive *significant contribution* from the component 'girl.'" (emphasis added)); *Lever Bros. Co. v. Barcolene Co.*, 463 F.2d 1107, 1108 (CCPA 1972) (finding that ALL CLEAR had a different connotation than ALL); *Colgate-Palmolive Co. v. Carter-Wallace, Inc.*, 432 F.2d 1400 (CCPA 1970) (affirming the Board's determination that the common term PEAK was not so strong as to cause confusion despite the addition of the word PERIOD). Copeland-Smith also relies on cases in which it was the generic term that was common between two marks, a scenario that is inapplicable to this case. *See Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed. Cir. 1992) (common generic word OPRY); *Knight Textile Corp. v. Jones Inv. Co.*, 75 USPQ2d 1313, 1317 (TTAB 2005) (common suggestive word ESSENTIALS).

At bottom, Copeland-Smith asks us to reach a different conclusion than the Board by finding that BEAST MODE SOCCER is distinguishable in appearance, sound, connotation, and commercial impression from BEAST MODE. Copeland-Smith argues that the word SOCCER tells consumers that the BEAST MODE level of training is for soccer and not for some other athletic endeavor. He further

argues that the marks are visually and phonetically dissimilar because of the number of words and syllables. And he contends that the commercial impression of Lynch's BEAST MODE mark is associated with Lynch's personal nickname earned during his career playing college and professional football. Copeland-Smith insists that "[Lynch]'s mark contains absolutely no association with soccer, because [Lynch] is not associated with soccer, only football." Appellant's Br. 36.

Copeland-Smith presented these same arguments to the Board, and the Board found them unpersuasive. The Board was entitled to lend more weight to the strength of the term BEAST MODE in the overall mark over the additional word and syllables in the mark due to the word SOCCER. J.A. 9; *see In re Electrolyte Labs., Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark." (internal citations omitted)). And regarding the commercial impression, the Board found that the evidence showed many meanings for BEAST MODE that are not associated with Lynch himself. J.A. 10–11. Moreover, the Board found that Lynch's mark would not necessarily be associated with football because Lynch's marks are not restricted to football-themed clothing and encompass trade channels through which soccer clothing is also sold. J.A. 11.

This court has acknowledged the subjective and fact-dependent nature of comparing marks, particularly the weight given to respective words. *See Hearst*, 982 F.2d at 494. In this case, the Board's overall analysis comports with the directive to assess "whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012) (internal quotation marks omitted). Substantial evidence supports the Board's findings that, looking at the

mark as a whole, the generic word SOCCER is the only thing that distinguishes Copeland-Smith's mark from Lynch's, and that generic word is dwarfed by the term BEAST MODE. Thus, having considered Copeland-Smith's arguments with respect to *DuPont* factor 1, we conclude that substantial evidence supports the Board's finding that the marks are sufficiently similar to cause a likelihood of confusion.

B.

*DuPont* factor 6 concerns the number and nature of similar marks in use on similar goods. *DuPont*, 476 F.2d at 1361. "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark. The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Juice Generation*, 794 F.3d at 1338 (internal citations omitted). "[S]ufficient evidence of third-party use of similar marks can show that customers have been educated to distinguish between different marks on the basis of minute distinctions." *Id.* (quotations omitted). "In addition, a real evidentiary value of third party registrations per se is to show the sense in which a mark is used in ordinary parlance." *Id.* at 1339 (quotations and emphasis omitted). However, even weak marks are entitled to protection against registration of a confusingly similar mark. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401 (CCPA 1974).

Copeland-Smith contends, based on third-party uses and registrations, that Lynch's mark is weak and entitled to limited protection. Based on definitions from the website www.urbandictionary.com, Copeland-Smith asserts that the term "Beast Mode" is a well-known phrase in American slang that refers to a level of high effort or energy in exercise or sports. *See* J.A. 102–140. Copeland-Smith

relies on evidence of 31 third-party uses, 3 third-party registrations, and 15 third-party applications that incorporate the term "Beast Mode." Appellant's Br. 14–19; J.A. 141–504, 648–722. Copeland-Smith argues that the Board improperly discounted the extensive evidence that third parties have used and registered the BEAST MODE mark.

The Director responds that the Board carefully assessed the evidence of third-party use and correctly determined that most of the evidence was too far removed from the relevant fields of use for Copeland-Smith's and Lynch's marks. Though the Director acknowledges that Copeland-Smith produced a large quantity of evidence, he disputes the quality of the evidence. In support of his argument, the Director presents a table documenting the alleged third-party uses, registrations, and applications, with an explanation of why each is of little or no probative value. Appellee's Br. 28–32.

We agree with the Director. The Board gave due consideration to all of the evidence of third-party uses, registrations, and applications in the record. The Board closely inspected the evidence and determined that, despite the volume of evidence submitted, much of it was of limited probative value on the question of the weakness of Lynch's BEAST MODE mark for t-shirts and other clothing. J.A. 13. Of the evidence that was probative, the Board found that it failed to "establish that the cited mark BEAST MODE is so weak that confusion is not likely to result from the registration of the very similar mark BEAST MODE SOCCER for identical or even related goods." J.A. 14.

For example, regarding the applications upon which Copeland-Smith relies, the Board found that, without evidence that any of the applications were registered, they had no probative value for determining actual third-party use of the mark. J.A. 13 (citing *In re Mr. Recipe, LLC*, 118

USPQ2d 1084, 1089 (TTAB 2016)).  The Board then considered the seven third-party registrations identified in the record and found that none of them identifies articles of clothing, but rather pertained to "computer software, dietary and nutritional supplements, beer, advertising and marketing consultancy, and entertainment in the nature of competitions in the field of fitness, that is, goods and services unrelated to the goods at issue here." [1]  J.A. 13 (citing *In re i.am.symbolic, LLC*, 866 F.3d 1315 (Fed. Cir. 2017)). Finally, the Board considered Copeland-Smith's submitted evidence of Internet websites allegedly using the BEAST MODE mark to offer goods and services for sale.  J.A. 14–15.   The Board concluded that the foreign websites have no probative value for determining likelihood of confusion in the United States, and many of the U.S. websites have limited probative value "inasmuch as they concern  goods and services other than clothing."   J.A. 14; *see Omaha Steaks Int'l Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1324 (Fed. Cir. 2018) ("[T]he present analysis only involves goods like those being offered by the parties to the 'relevant public,' while third-party use outside of that relevant market is meaningless.").  The Board acknowledged that roughly ten of the websites offered clothing and thus had relevance to determining the weakness of Lynch's BEAST MODE mark but found that the evidence of those ten websites "does not appear to approach the quantum of evidence of use" in prior cases in which marks were found to be weak.  J.A. 14.

---

[1] In this appeal, Copeland-Smith limits his reliance to only three of the seven registrations in the record.  Appellant's Br. 19.  Those three registrations, however, are for "fitness competitions," "fitness training," and "dietary and nutritional supplements"—*i.e.*, the exact evidence that the Board found was *not* related to Lynch's clothing.

Copeland-Smith disagrees with the Board's factual findings regarding third-party uses, registrations, and applications. Copeland-Smith asserts that "athletic training services, nutritional supplements, and energy drinks [] *should be* considered goods and services similar to clothing." Appellant's Br. 21 (emphasis added); Reply Br. 5. But Copeland-Smith offers extremely limited factual support for that assertion, namely, that one person—Lynch himself—filed applications to register BEAST MODE for energy drinks and participation in football games. Appellant's Br. 20; Reply Br. 4. Beyond that, Copeland-Smith relies on an unrelated case about the relationship between "restaurant services" and "food products"—neither of which is at issue in this case—and the fact that "clothing" is related to "sports equipment." Appellant's Br. 22–24; Reply Br. 4–5. It does not follow, however, that "clothing" must also be related to "athletic training services, nutritional supplements, and energy drinks." Notably, Copeland-Smith currently owns a registered mark for BEAST MODE SOCCER for athletic training services, which is consistent with the Board's finding that there is a difference between clothing and athletic training services. *See* J.A. 494–498 (Reg. 4,189,996).

The law requires the Board to carefully parse the evidence of third-party uses and registrations so as to avoid crediting an applicant's ability to amass a large quantity of evidence pertaining to unrelated goods. *See Conde Nast Publ'ns, Inc. v. Am. Greetings Corp.*, 329 F.2d 1012, 1014 (CCPA 1964) ("[T]he board gave undue weight to the imposing array of third-party registrations."). That is precisely what the Board did here. Copeland-Smith fails to persuade us that the results of that parsing are not supported by substantial evidence.

Copeland-Smith also criticizes the Board's finding that only ten U.S. websites in the record offer clothing articles, suggesting that individual styles displayed on websites

should be considered individual instances of third-party use. But without a limiting principle, this argument is simply an arbitrary disagreement with the Board's findings regarding the impact of the evidence. Again, Copeland-Smith fails to demonstrate that the Board's findings were not supported by substantial evidence. Thus, having considered Copeland-Smith's arguments with respect to *DuPont* factor 6, we find that substantial evidence supports the Board's factual finding that Copeland-Smith "has not established any significant weakness in [Lynch]'s mark" with respect to the goods at issue. J.A. 18.

## C.

We finally turn to the Board's weighing of the *DuPont* factors. Having found that *DuPont* factors 1, 2, 3, 4, 6, 7, and 8 weigh in favor of a likelihood of confusion, the Board concluded that "[Copeland-Smith]'s mark BEAST MODE SOCCER for his T-shirts and soccer balls is likely to cause confusion with [Lynch]'s mark BEAST MODE for his T-shirts and other clothing goods." J.A. 18. We have considered Copeland-Smith's challenges regarding *DuPont* factors 1 and 6, and we conclude that the Board's findings were supported by substantial evidence. We also credit the Board's factual findings regarding the other five *DuPont* factors, which Copeland-Smith has not challenged in this appeal. Like the Board, we conclude based on the *DuPont* factors that Copeland-Smith's mark is likely to cause confusion with Lynch's mark. The Examining Attorney therefore properly refused registration of Copeland-Smith's mark pursuant to § 2(d) of the Lanham Act.

## CONCLUSION

We have considered Copeland-Smith's remaining arguments, but we find them to be unpersuasive. Accordingly, the decision of the Board affirming the Examining Attorney's refusal to register is affirmed.

**AFFIRMED**